STEPHEN KEPPER, ESQ.
Louisiana Bar No. 34618
INTELLECTUAL PROPERTY CONSULTING, LLC
400 Poydras Street, Suite 1400
New Orleans, LA 70130
Telephone:     (504) 322-7166
Facsimile:     (504) 322-7184
Email: skepper@iplawconsulting.com
Pro Hac Vice Applications to Be Submitted


JASON M. WILEY, ESQ.
Nevada Bar No. 9274
E. DANIEL KIDD, ESQ.
Nevada Bar No. 10106
WILEY PETERSEN
1050 Indigo Drive, Suite 200-B
Las Vegas, Nevada 89145
Telephone:     (702) 910-3329
Facsimile:     (702) 553-3467
Email:  jwiley@wileypetersenlaw.com
           dkidd@wileypetersenlaw.com

*Attorneys for Plaintiff*

# UNITED STATED DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ESCOBAR INC.,<br><br>                Plaintiff<br><br>v.<br><br>DANIEL D. REITBERG,<br><br>                Defendant | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND** |

Plaintiff Escobar Inc., ("Escobar") hereby brings this Complaint for Damages and Injunctive Relief against Defendant Daniel D. Reitberg ("Defendant" or "Reitberg") and in support thereof avers as follows:

## NATURE OF ACTION

1.      Escobar is a general holding company organized to monetize the intellectual property rights related to Pablo Escobar and his family.  Among other things, Escobar utilizes a YouTube channel entitled "Escobar Inc. Official" (the "YouTube Channel") to promote and sell various products to its followers and subscribers.  While serving as the Chief Operating Officer ("COO") of Escobar, Reitberg was a trusted fiduciary who had access to Escobar's proprietary and trade secret information, including bank accounts and the designated username and password required to access, manage, and/or modify the content on the YouTube Channel.  Towards the end of his employment, and prior to abandoning his position, Reitberg, in bad faith, destroyed proprietary financial banking information and deliberately hijacked Escobar's YouTube Channel by purposefully changing the designated password, and thus, preventing Escobar from accessing its own YouTube Channel.  Now, upon information and belief, Reitberg is using this information as ransom and a means to extort significant sums of money from Escobar.  As a result of Reitberg's conduct, Escobar asserts claims for: Violation of the Defend Trade Secrets Act; Violations of the Computer Fraud and Abuse Act; Violation of the Nevada Uniform Trade Secrets Act; Breach of Fiduciary Duty/Duty of Loyalty; Conversion; and Unjust Enrichment.

## THE PARTIES

1.      Plaintiff Escobar is a corporation, organized and existing under the laws of the Commonwealth of Puerto Rico with its principle place of business located at Metro Office Park 7 Calle 1 Suite 204 Guaynabo, Puerto Rico 00968.

2.      Defendant is a former officer of Escobar.  Defendant is a citizen and domiciliary of the State of Nevada residing at 1504 French Merlot Court, Las Vegas, NV 89144-1128.

## JURISDICTION

3.      Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. §1332. The parties are of diverse citizenship and the amount in controversy exceeds Seventy-Five Thousand dollars ($75,000), exclusive of interest and costs.

4.      Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331. More specifically, this action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, and the Computer Fraud and Abuse Act, 18 U.S.C. §1030, and this Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367.

## VENUE

5.      Venue in this district is proper pursuant to 28 U.S.C. §1391, because the Defendant resides in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## STATEMENT OF FACTS

6.      Escobar is a holding company that owns the intellectual property rights to the name and likeness of Pablo Escobar. Since 2015, Escobar's primary source of revenue has been licensing the rights to the well-known "Pablo Escobar" name, including assisting and consulting in the development of motion pictures and other visual media.

7.      In addition to licensing the rights to the Escobar name and providing consulting services, Escobar began developing and selling its own merchandise using the "Escobar" name, which over the past couple years, has been highly lucrative for the company.

8.    Reitberg was employed as the Chief Operating Officer ("COO") for Escobar.  In that position, Reitberg was primarily responsible for overseeing the operations of Escobar, including setting up and monitoring company bank accounts as well as performing an accounting of current sales.

9.    In 2019, Reitberg setup the YouTube Channel for Escobar, Inc, including the designated username and password required for accessing the YouTube Channel in order to manage and/or modify its content.  The YouTube Channel can be viewed using the following link: https://youtube.com/escobarincofficial.

10.    The YouTube Channel serves as Escobar's primary advertising platform, and in the last couple years, has accumulated over 4,500,000 views by customers and potential customers and has thousands of individual subscribers, who through their own accounts, share the YouTube Channel's content with millions of their followers.

11.    Since 2019, the YouTube Channel has enjoyed tremendous success, generating over One Million dollars ($1,000,000) in sales for advertised products.

12.    On November 7, 2019, Reitberg's employment with Escobar was terminated for failing to provide proper oversight of operations and, in particular, failing to ensure outstanding invoices and creditors were paid.

13.    A few months later, around March 10, 2020, Reitberg convinced Escobar to re-hire him in his former capacity as COO. Reitberg, therefore, occupied an executive-level position of particular trust and confidence within Escobar.  At the time, Escobar had no reason to believe that Reitberg had some hidden, underlying untoward purpose for seeking his former job.

14.    Reitberg subsequently set up corporate bank accounts which were created for the purpose of collecting payments for Escobar merchandise.

15.     Only Reitberg and Escobar's owner, Olof Gustafsson, knew the designated username and password to the YouTube Channel.  Indeed, given the popularity and its reputation, Escobar not only took steps to limit the number of people who would have access to and control over the YouTube Channel, but also took reasonable steps to protect the required access information, including the necessary password.

16.     Not long after being rehired, around March 19, 2020, Reitberg's true intentions were made known after he abandoned his position without any notice to Escobar.

17.     Escobar has since learned that Reitberg, while still having access to confidential and proprietary information belonging to Escobar, closed the corporate bank accounts and made off with thousands of dollars in earned revenues belonging to Escobar.  It is further believed that Reitberg destroyed all evidence linking the money in the bank accounts to Escobar purchase orders.

18.     Moreover, upon information and belief, before abandoning his position, Reitberg deliberately, without authorization, and with the sole intention of depriving Escobar use of its YouTube Channel, changed the protected password of the YouTube Channel, allowing him to steal and take control of Escobar's official YouTube Channel.

19.     Since Escobar learned of the Reitberg's theft, Escobar has made numerous attempts to contact Reitberg in order to get the password and take back control of the YouTube Channel; however, those attempts have been met with unwarranted demands for money.

20.     Reitberg's theft of the YouTube Channel as a means to extort money from Escobar has forced this lawsuit.

21.     As of the filing of this lawsuit, Reitberg has refused to return the YouTube Channel or money he has taken from Escobar.

**FIRST CLAIM FOR RELIEF**

**(Violation of Defend Trade Secrets Act, 18 U.S.C. §1836)**

22.     Escobar incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

23.     Escobar's passwords and access information to its YouTube Channel as well as the financial information related to consumers who purchased products through the YouTube Channel are trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §1836.

24.     Escobar took adequate measures and maintained the foregoing information and technology as trade secrets, which secrecy was guarded and not readily available to others.  Indeed, these trade secrets were only known to Reitberg and Escobar's chief executive officer, Olof Gustaffson.

25.     Escobar is headquartered in Puerto Rico but regularly transacts business in other states and around the world, including selling the products advertised on its YouTube Channel to subscribers, followers, and consumers throughout the United States.  Escobar's trade secrets are frequently used by Escobar in interstate commerce.

26.     Reitberg acquired Escobar's trade secrets by improper means, including but not limited to, stealing Escobar's proprietary access codes to its YouTube Channel, and refusing to turn over financial bank account information related to company sales and consumers.

27.     Reitberg's acts of misappropriation were willful and malicious.

28.     As a direct and proximate result of Reitberg's acts of misappropriation, Escobar has suffered and will suffer irreparable harm and damages.

29.     Under the Defend Trade Secrets Act, Escobar is entitled to and requests preliminary and permanent injunctive relief against Reitberg to prohibit his actual and/or threatened misappropriation of Escobar's trade secrets.

30.     Under the Defend Trade Secrets Act, Escobar is entitled to and requests an award of damages in its favor for actual loss caused by the misappropriation, damages for all unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss, and/or damages measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of Escobar's trade secrets.

31.     Under the Defend Trade Secrets Act, as a result of Defendant's willful and malicious misappropriation, Escobar is entitled to and requests exemplary damages in an amount not more than two times Escobar's actual damages, plus reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Violation of Nevada Uniform Trade Secrets Act, NRS 600A et. et seq.)

32.     Escobar incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

33.     Escobar's passwords and access credentials to its YouTube Channel, as well as the financial banking information relating to consumer purchase orders, are trade secrets within the meaning of Nevada Uniform Trade Secrets Act, NRS 600A et seq.

34.     Escobar took adequate measures and maintained the foregoing information and technology as trade secrets, which secrecy was guarded and not readily available to others.  Indeed, these trade secrets were only known to Reitberg and Escobar's chief executive officer, Olof Gustaffson.

35.     Reitberg misappropriated Escobar's trade secrets when he stole Escobar's proprietary access codes to its YouTube Channel with the sole intention of depriving Escobar use of its property.

36.     Reitberg misappropriated Escobar's trade secrets when, after abandoning his duties at COO, he closed corporate bank accounts and refused to turn over financial information related to company sales and consumers.

37.     Reitberg's acts of misappropriation were willful and malicious.

38.     As a direct and proximate result of Reitberg's acts of misappropriation, Escobar has suffered and will suffer irreparable harm and damages.

39.     Under the Nevada Uniform Trade Secrets Act, Escobar is entitled to and requests preliminary and permanent injunctive relief against Reitberg to prohibit his actual and/or threatened misappropriation of Escobar's trade secrets.

40.     Under the Nevada Uniform Trade Secrets Act, Escobar is entitled to and requests an award of damages in its favor for actual loss caused by the misappropriation, damages for all unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss, and/or damages measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of Escobar's trade secrets.

41.     Under the Nevada Uniform Trade Secrets Act, as a result of Defendant's willful and malicious misappropriation, Escobar is entitled to and requests exemplary damages in an amount not more than two times Escobar's actual damages, plus reasonable attorneys' fees.

## <u>THIRD CLAIM FOR RELIEF</u>

### (Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030)

42.     Escobar incorporates the allegations set forth in the preceding paragraphs as

if set forth in full herein.

43.     In his capacity as COO for Escobar, Reitberg owed a fiduciary duty to Escobar not to use or disclose Escobar's confidential or trade secret information except in the course of performing his duties for, and for the benefit of, Escobar.

44.     In reliance on and in consideration of his fiduciary obligations to Escobar, Escobar gave Reitberg access to its computer systems, financial systems, including access to Escobar's YouTube Channel and financial banking accounts.

45.     Through the conduct described above, Reitberg knowingly and with the intent to defraud Escobar, and in violation of his fiduciary duties to Escobar, improperly accessed Escobar's proprietary and confidential electronic data that is stored on its secure and protected computer system. Among other things, Reitberg hijacked Escobar's YouTube Channel and deleted proprietary financial data regarding past sales before abandoning his employment.

46.     Through the conduct described above, Reitberg acted without authorized access and/or he exceeded his authorized access to Escobar's computers.

47.     Escobar has incurred and/or will incur expenses in excess of $5,000 over a one-year period in investigating the wrongful acts committed by Reitberg, assessing the resulting damages, and restoring or attempting to restore its computer systems and the data stored thereon to their condition prior to Reitberg' wrongful acts.

48.     Escobar has suffered damage and loss by reason of these violations, including but not limited to, harm to Escobar's data, programs, and computer systems and other losses and damage in an amount to be proved at trial, but, in any event, in an amount exceeding $5,000 aggregated over a one-year period.

49.     Under the Computer Fraud and Abuse Act, Escobar is entitled to and requests an award of compensatory damages and injunctive and other equitable relief.

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duties of Loyalty and Due Care)

50.     Escobar incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

51.     As an employee and senior executive of Escobar, and someone in whom Escobar reposed special trust and confidence, Reitberg owed Escobar a fiduciary duty, including duties of loyalty and due care.

52.     Reitberg's duties of loyalty and due care to Escobar included, without limitation, duties: not to act in opposition to Escobar's interests; not to use his position with Escobar for personal gain at the expense of Escobar; not to use, disclose, or misappropriate Escobar's property and information, including but not limited to the company's trade secrets, for his own purpose or for the purpose of any third party; and not to damage or attempt to damage Escobar's computer systems.

53.      Reitberg's fiduciary duty not to use or disclose Escobar's confidential or trade secret information for his own benefit or the benefit of a third party continued after the conclusion of his employment with Escobar.

54.     By virtue of the conduct alleged herein, Reitberg breached his fiduciary duties to Escobar.

55.     Escobar has suffered damages as a direct and proximate result of Reitberg's breaches of fiduciary duty.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

56.     Escobar incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

57.     The YouTube Channel's designated username and password is the only way to access and control the content displayed on the YouTube Channel, which constitutes valuable property belonging to Escobar.

58.     As alleged herein, Reitberg, in an unauthorized manner, accessed and then subsequently changed the username and password to the YouTube Channel.

59.     As alleged herein, Reitberg is now in wrongful possession of the YouTube Channel.

60.     As alleged herein, Reitberg took and exercised control over the YouTube Channel without authorization, and upon information and belief, is now using or is planning to use the YouTube Channel in a manner that is inconsistent with Escobar's use and enjoyment of the property.

61.     As alleged herein, Reitberg has been wrongfully exercising dominion and control over the YouTube Channel.

62.     As alleged herein, Reitberg has used and converted the YouTube Channel for his own benefit.

63.     Escobar has demanded that Reitberg return the YouTube Channel, but Reitberg has refused to do so.

64.     Escobar has suffered damages as a direct and proximate result of Reitberg's conversion of the YouTube Channel.

65.     The corporate bank accounts set up and controlled by Reitberg, in his capacity as COO, were the sole bank accounts used to deposit payments from purchase orders of Escobar merchandise ("Escobar Revenue").

66.     As alleged herein, Reitberg, in an unauthorized manner, terminated those corporate bank accounts and is now in wrongful possession of the Escobar Revenue contained in those accounts.

67.     As alleged herein, Reitberg took and exercised control over the corporate bank accounts without authorization, and upon information and belief, is now using or is planning to liquidate the bank accounts and use the Escobar Revenue from those accounts in a manner that is inconsistent with Escobar's use and enjoyment of the property.

68.     As alleged herein, Reitberg has been wrongfully exercising dominion and control over the corporate bank accounts.

69.     As alleged herein, Reitberg has converted or is planning to convert the corporate bank accounts, including the Escobar Revenue for his own benefit.

70.     Escobar has demanded that Reitberg return the Escobar Revenue, but Reitberg has refused to do so.

71.     Escobar has suffered damages as a direct and proximate result of Reitberg's conversion of the corporate bank accounts containing the Escobar Revenue.

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment)

72.     Escobar incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

73.     By virtue of his conduct alleged herein, Reitberg has been enriched by his unlawful acquisition and/or use of Escobar's YouTube Channel, earned revenues, and financial banking information.

74.     As a consequence of Reitberg's unlawful acquisition and/or use of Escobar's YouTube Channel, earned revenues, and financial banking information, Escobar has suffered an impoverishment.

75.     Reitberg's enrichment and Escobar's impoverishment were without justification or cause.

76.     In the event Escobar is found to have no other remedy at law, then Reitberg is bound to compensate Escobar in an amount equal to Reitberg's enrichment or Escobar's impoverishment, whichever is less.

**WHEREFORE**, Plaintiff Escobar, Inc. respectfully requests that this Court:

1. Enter judgment in its favor and against Defendant Daniel D. Reitberg, and order Defendant to pay damages to Plaintiff, in an amount to be proved at trial, plus interest, costs, exemplary damages, and attorneys' fees as allowed by law;

2. Enter a temporary restraining order and preliminary and permanent injunction ordering that Defendant:

(a) be restrained and enjoined from, directly or indirectly, disclosing or making any use of any trade secrets, confidential information, knowledge, data or other information of Escobar;

(b) must return to Escobar, within 48 hours, any confidential information or trade secrets that are in Defendant's possession, custody, or control, including but not

limited to the access codes to the YouTube Channel and any and all company financial information;

3. Grant Plaintiff such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DATED this 24th day of April, 2020.

Respectfully submitted,

*/s/ Stephen Kepper*
STEPHEN KEPPER, ESQ. (LA Bar No. 34618)
INTELLECTUAL PROPERTY CONSULTING, LLC
400 Poydras Street, Suite 1400
New Orleans, LA 70130
Telephone:     (504) 322-7166
Facsimile:     (504) 322-7184
Pro Hac Vice Applications to Be Submitted

*AND*

*/s/ Jason Wiley*
JASON M. WILEY, ESQ. (Nevada Bar 9274)
E. DANIEL KIDD, ESQ. (Nevada Bar 10106)
WILEY PETERSEN
1050 Indigo Drive, Suite 200-B
Las Vegas, Nevada 89145
Telephone:     (702) 910-3329
Facsimile:     (702) 553-3467

*Attorneys for Plaintiff*